Hearing: March 23, 2006

Glynn L. Mays (GM 7261)
Senior Assistant General Counsel
George G. Wilder (GW 0381)
Counsel
Commodity Futures Trading Commission
1155 21st Street, N.W.
Washington, D.C. 20581
(202) 418-5120/5140
gmays@cftc.gov
gwilder2@cftc.gov

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

In re

    REFCO, LLC,　　　　　　　　　　　　　　No. 05-60134 (RDD)
　　　　　　　　　　　　　　　　　　　　　　　Chapter 7
                Debtor.

_____

**OBJECTION OF THE COMMODITY FUTURES TRADING COMMISSION
TO DEBTOR REFCO LLC'S MOTION TO CONVERT
CHAPTER 7 CASE TO CHAPTER 11**

     1. The Commodity Futures Trading Commission ("Commission" or "CFTC") is an agency of the United States. It administers and enforces the Commodity Exchange Act ("CEA"), 7 U.S.C. § 1, *et seq*.

     2. The special commodity broker provisions of Subchapter IV of Chapter 7 of the Code are a product of the 1978 revisions of the bankruptcy laws. Those revisions also designated the Commission to adopt rules concerning Subchapter IV cases. *See* 7 U.S.C. § 24. The Commission's Bankruptcy Rules appear at 17 C.F.R. Part 190.

3. Code Section 762 grants the Commission the right to appear and be heard on any issue in a commodity broker liquidation case under Chapter 7. The interpretation of the provisions of the Code as they pertain to commodity broker debtors is significant to the Commission's regulatory mission under the CEA, and its responsibilities under the Code and the bankruptcy rulemaking provisions of 7 U.S.C. § 24.

4. Persons engaging in commodity futures brokerage are regulated under the CEA as futures commission merchants. Futures commission merchants are required to liquidate under the special commodity broker liquidation provisions of Subchapter IV of Chapter 7. *See* 11 U.S.C. §§ 101(6) & 761(8) (defining a commodity broker under the Code in part in terms of the definition of a futures commission merchant under the CEA); 11 U.S.C.§ 109(d) (excluding commodity brokers from eligibility for reorganization under Chapter 11).

5. The debtor, Refco, LLC, was registered with the Commission as a futures commission merchant under Section 4d of the CEA, 7 U.S.C. § 6d on November 25, 2005. It filed its petition for relief as a commodity broker under Chapter 7 on November 25, 2005.

6. On February 8, 2006 the debtor filed a motion to convert the instant Chapter 7 proceeding to a case under Chapter 11.

## DISCUSSION

**A.    Subchapter IV of Chapter 7**

7. Congress enacted the commodity broker liquidation provisions to protect

customers from the ill-effects of a commodity broker's insolvency and to protect market stability during such insolvency.  *See* Sen. Rep. No. 989, 95th Cong., 2d Sess. 7-8 (1978).[1]

8. The Code includes a number of mandatory provisions governing commodity broker liquidations.  It provides for an orderly liquidation or transfer of open commodity positions, 11 U.S.C. § 766 (generally); a process took place pursuant to this Court's orders the weekend immediately after the petition was filed.[2]  The Code imposes duties, such as a duty to provide customer notice under Code Section 765, and a duty to pay allowed customer net equity claims under the priority provisions of Code Section 766(h).[3]

9. Congress mandated these provisions in order to put an end to the "ad hoc" procedures that bankruptcy courts were forced to improvise in the absence of direct statutory guidance for commodity broker cases prior to the Bankruptcy Reform Act

---

[1] The legislative history is reproduced in the various *Norton Bankruptcy Law and Practice 2d,* Code pamphlets.

Market stability protection is achieved primarily through the protection of customer account transfers provided in Code Section 764(b) and CFTC Regulations 190.02(e)(1), 190.03(a), and 190.06.  The customer protection objective is met primarily through the special treatment of customer property mandated by Section 766 and CFTC Regulations 190.02(b)(4) and (d), 190.04(e)(2), 190.07, and 190.08.

[2] Such transfers, if approved by the Commission are protected by Code Section 764(b) from avoidance actions.

[3] Code Section 766(h) provides that the trustee "shall distribute customer property ratably to customers…in priority to all other claims, except claims [for administration] *that are attributable to the administration of customer property."* (Emphasis added.)  Claims for other administrative expenses have a lower priority.

3

of 1978.  *See* H.R. Rep. No. 959, 95th Cong., 1st See. 269-273 (1977).[4]  Congress specifically intended that commodity brokers should not proceed under Chapter 11 for the very reason that none of the specific customer protections mandated in Subchapter IV of Chapter 7 would apply in Chapter 11 cases.  *Id.*  As set forth below, the instant conversion motion is an invitation to return to the pre-1978, "ad hoc" approach that Congress specifically intended to prohibit.

10.  Although account transfers have been accomplished in this case, a number of outstanding commodity-related duties remain to be fully performed, including the allocation of commodity customer property and allowance of commodity customer claims under Commission Regulation 190.08.[5]  As the docket in this case shows, the debtor only recently filed its schedules (February 17, 2006). Steps are now being taken by the Trustee to provide the notice under Code Section 765(a) that is needed to *begin* the commodity claims allowance process.  *See Trustee's March 3, 2006 Notice of Presentment of Order Approving Forms of Customer Notice, Publication Notice and Proof of Claim* (Doc. No. 94).  It is apparent that the process for resolving allowable commodity customer net equity claims (including proprietary customer claims) has just begun, and its completion

---

[4] *See* n. 1, *supra.*

[5] CFTC Regulation 190.08(a)(ii)(E) includes within the scope of the customer property that property which represents the recovery of any debit balance, margin deficit, or other claim against a customer account.

4

date is uncertain. [6]

## B. Interpretation of the CEA and Code Should Avoid an Absurd Result

11. The debtor urges that since the interim Trustee has been appointed and has transferred all customer accounts and since the debtor is no longer engaged in brokerage business, it is no longer a "commodity broker," as defined under the Code and thus is no longer barred from proceeding under Chapter 11 of the Code. *Refco Motion* at ¶¶10-12. In brief, the debtor argues that a "commodity broker" is defined in the Code as a "futures commission merchant," as defined in Code Section 761(8). That section defines "futures commission merchant" as having the meaning assigned to that term in the CEA. CEA Section 1a(20) defines "futures commission merchant" as a person that "is engaged in soliciting or in accepting orders for the purchase or sale of an commodity for future delivery…; and in connection with such solicitation or acceptance of orders, accepts any money …to margin, guarantee, or secure any trade or contracts that result or may result therefrom." [7] Since the key

---

[6] CFTC Regulation 190.07 provides detailed guidance for the computation of allowed net equity. See 17 C.F.R. § 190.07.

[7] Section la(20) of the CEA, 7 U.S.C. § la(20), provides that

The term, "futures commission merchant" means an individual, association, partnership, corporation, or trust that--

    (A) is engaged in soliciting or in accepting orders for the purchase or sale of any commodity for future delivery on or subject to the rules of any contract market ... ; and

    (B) in or in connection with such solicitation or acceptance of orders, accepts any money, securities, or property (or extends credit ... ) to

5

definition in the CEA is framed in the present tense, and since the debtor is no longer engaged in "soliciting or accepting" orders or money, the debtor argues it is no longer subject to the requirement that it proceed under Subchapter IV. *Id.*

12. If Refco's reasoning is followed in this case - where it is a fact known to the Court that the debtor was operating as a futures commission merchant on November 25, 2005, the day that it filed its petition - Congress would need to be found to have intended the perverse result that a successful account transfer would disqualify the debtor from the commodity broker liquidation process. Why would Congress have spelled out any additional terms of Subchapter IV, if it intended successful account transfer to end the whole liquidation process?

13. Refco implicitly concedes the significance of this analysis when it states that to the extent that customer claims arise after a conversion to Chapter 11, such claims "can be asserted against the assets of Refco LLC with the same priority as they may have been asserted against the Chapter 7 debtor." *Refco Motion* at n.1. Refco's statement, however, ignores the express terms of Code Section 103(d), which states that Subchapter IV of Chapter 7 applies *only* in cases under Chapter 7 concerning commodity brokers. The commodity customer priority of Code Section 766(h) does not apply in Chapter 11, and as debtor-in-possession, Refco LLC would not be legally bound to include that priority as a confirmable term of its

---

margin, guarantee, or secure any trades or contracts that result or may result therefrom.

reorganization plan. *See* 11 U.S.C. §§ 1123 and 1129.[8]

14. The Supreme Court has instructed that, in all cases, federal courts must interpret the words of a statute in light of the specific purposes Congress has sought to serve. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 608 (1979). Even arguably clear statutory text must be interpreted in a manner avoiding an absurd result. *Dodd v. United States*, ___ U.S. ___, 125 S. Ct. 2478, 2488 (2005). Statutory provisions should not be interpreted so as to render superplusage other provisions in the same enactment. *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 562 (1990). When determining whether Congress has spoken on an issue, and whether it has unambiguously *expressed* its intent, particular statutory provisions should not be examined in isolation, as the Chapter 7 Debtor urges here. *Natural Resources Defense Council v. Abraham*, 355

---

[8] To be sure, the Commission recognizes that this Court could enter an order conditioning the conversion on adoption of a duplicate of the Subchapter IV procedures within the converted Chapter 11 case. Nonetheless, this would be just the sort of ad hoc procedure that Congress acted to bar when it made the Subchapter IV procedures and protections mandatory.

Moreover, it is purely happenstance that the requested conversion does not also raise the specter that upon conversion to Chapter 11, the transfer of accounts, upon which Refco places great emphasis, will become subject to possible reversal in avoidance actions. Within a Subchapter IV proceeding, such transfers are protected from avoidance by Code Section 764(b). This protection, however, for any pre-petition transfers, does not travel with the estate in a conversion to Chapter 11. *See* Code Section 103(d); Section 549(a)(2)(B) (protection for court-ordered post-petition transfers). While probably not a factor in this particular case because of the terms of the November 25, 2005 order approving the purchase and sale of the debtor's accounts, this case would become dangerous precedent. The avoidance issue would pose a grave risk in most imaginable commodity broker cases in the future.

7

F.3d 179, 195 (2nd Cir. 2004). Furthermore, this Court should not be guided by a single sentence or member of a sentence, but should look to the provisions of the whole Bankruptcy Code and Subpart IV, plus the Part 190 regulations, and to their objects and policies. *Langhorne v. Ashcroft*, 377 F.3d 175, 180 (2nd Cir. 2004).

15. Refco's proposal would allow commodity brokers to short circuit the liquidation process by filing, perhaps transferring accounts, and then abandoning all remaining steps required under the Subchapter IV.[9] However, a statute "cannot be held to destroy itself." *Citizen's Bank of Maryland v. Strumpf,* 516 U.S. 16, 20 (1995) (quoting *Texas & Pacific R. Co. v. Abilene Cotton Oil Co.,* 204 U.S. 426, 446 (1907)).

16. Accordingly, rather than taking the Debtor's invitation to engage in the existential "verb-tense" analysis the Debtor seeks, this Court should hold that, reading the statute as a whole, if on the date of filing the Debtor was required to proceed under Subchapter IV of Chapter 7, then it plainly must complete the process under that Subchapter.

---

[9] Transfer of accounts and open positions is plainly contemplated by the general financial regulatory (net capital) rules of the Commission, 17 CFR 1.17(a)(4) , and by the Code and the Commission's Bankruptcy Rules. Such transfers may not be possible or may not cover all accounts if a broker's insolvency is caused by a significant deficit in customer funds. Under Refco's theory of statutory construction a commodity broker that is no longer in business, *i.e.,* not currently soliciting customers, would not be required to proceed under Subchapter IV, whether or not it has transferred its accounts. And in such a circumstance, Refco's logic would deny customers whose accounts had not been transferred and customers with other priority claims the special customer priority of Code Section 766(h).

## C. Code Section 706(d) Also Bars Conversion to Chapter 11

17. Chapter conversion under Code Section 706 is not an absolute right. This Court has discretion to deny conversion where appropriate. *In re Krishnaya*, 263 B.R. 63, 68-69 (Bankr. S.D.N.Y. 2001). Refco was barred from Chapter 11 when it filed this case on November 25, 2005 because, as a commodity broker, it was not eligible for Chapter 11 relief. *See* Code Section 109(d).[10] On the basis of that same statutory authority, Refco's conversion motion must be denied under Code Section 706(d), which provides that a case cannot be converted to another chapter unless the debtor may be a debtor under that other chapter. *See Krishnaya,* 263 B.R. at 68-69. ("Likewise, a court passing on a conversion motion has the right to determine whether the debtor is eligible to be a debtor under [that other chapter].") Because Refco has yet to perform all the commodity-related duties required of it under Subchapter IV of Chapter 7 and the CFTC's regulations, it cannot convert its case to Chapter 11 now, and its conversion motion is, at best, premature.

18. As a preliminary matter, chapter eligibility under Code Section 109 is determined as of the case's original filing date. *See In re Pittsburgh & Lake Erie Properties, Inc.*, 290 F.3d 516, 519 (3d Cir. 2002)(Subchapter IV of Chapter 11 limited to debtors operated as railroad common carriers as of petition date); *In re*

---

[10] Code Section 109(d) also bars stockbrokers from reorganization under Chapter 11. The question of stockbroker eligibility for Chapter 11 reorganization has risen in the context of broker-dealer proceedings brought under the Securities Investor Protection Act of 1970 ("SIPA"). In resolving a SIPA appeal, the court stated that Congress had spoken clearly through Code Section 109(d). Broker-dealers cannot file for reorganization under Chapter 11. *See Securities Investor Protection Corporation v. Blinder, Robinson & Co.,* 962 F.2d 960, 964 (10th Cir. 1992).

9

*Navon*, 283 B.R. 367, 369 (Bankr. D. Conn. 2002)(U.S. presence of property for purposes of Code Section 109 determined as of petition date); *In re Global Ocean Carriers Limited*, 251 B.R. 31, 36-38 (Bankr. D. Delaware 2000)(same); *In re Axona International Credit & Commerce, Ltd.*, 88 B.R. 597, 614-15 (Bankr. S.D.N.Y. 1988)(same). Accordingly, as a commodity broker, Refco filed for Chapter 7 relief when it filed its petition on November 25, 2005.

19. While a Chapter 7 debtor has a statutory right to convert its case to another chapter "at any time" under Code Section 706(a), chapter conversion is subject to Code Section 706(d). Chapter eligibility is determined under Code Section 706(d) as of the date of the original filing of the bankruptcy petition rather than the conversion date. *See Lee v. LFG, LLC*, No. 01C7048, 2002 WL 1896394 (N.D. Ill. Aug. 5, 2002) at * 1 (in denying motion to convert to commodity brokerage liquidation case under Subchapter IV of Chapter 7, court identified case's original filing date as the "relevant" date); *In re Stern,* 266 B.R. 322, 325-26 (Bankr. D. Md. 2001)(debtor's conversion relates back to case's original filing date under Code Section 348(a), and chapter eligibility under Code Section 706(d) determined as of that same original date); *In re Pisczek*, 269 B.R. 641, 643 (Bankr. E.D. Mich. 2001); *In re Bush*, 120 B.R. 403, 405-06 (Bankr. E.D. Tex. 1990).

20. November 25, 2005, the date that Refco filed its Chapter 7 petition in this case, should stand as the dispositive date for determining chapter eligibility under Code Section 706(d) now. *In re Widdicombe*, 269 B.R. 803, 807-08 (Bankr. W.D. Ark. 2001)(Code Section 706(d) did not bar conversion where debtor eligible as

of original petition date); *cf. De Jounghe v. Mender*, 334 B.R. 760, 766-767 (BAP 1st Cir. 2005)(interpreting Code Section 1112(f) as constrictive rather than expansive of conversion right); *see also In re Tornheim*, 181 B.R. 161, 168-169 (Bankr. S.D.N.Y. 1995)(addressing Code Section 1112(f) as constrictive rather than expansive).[11] As the Code's legislative history indicates, Code Section 706(d) is meant to reinforce the eligibility standards of Section 109 by prohibiting conversions to a chapter unless the debtor was eligible for relief under that chapter. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 380, 385 (1977) and S. Rep. No. 989, 95th Cong., 2d. Sess. 99 (1978). To grant conversion now would constitute an abuse of the commodity broker liquidation process, and set a bad precedent for future commodity broker liquidation cases.

21. Refco relies on *Lee v. LFG*, *supra*, a chapter conversion case involving a former commodity broker that filed for Chapter 11 relief a year after it had ceased all commodity broker operations. *See Refco Motion* ¶ 11. The court in *Lee* denied conversion to Chapter 7 because as of the case's original filing date, the debtor was not engaging in commodity brokerage. Unlike the facts in *Lee*, in this case Refco was operating as a futures commission merchant as of November 25, 2005, the date that it filed this Chapter 7 case. Refco was accepting commodity customer money and soliciting commodity customer orders as of November 25, 2005, and therefore Refco met the *Lee* court's "verb-tense" test for defining the term "futures commission

---

[11] Like Code Section 706(d), Code Section 1112(f) provides that a case under Chapter 11 cannot be converted to another chapter unless the debtor "may be a debtor under such chapter." 11 U.S.C. § 1112(f).

11

merchant" under the CEA. Significantly, on the first day of this case, Refco sought this Court's order under Code Section 721 to *continue* commodity-related business operations. On February 3, 2006 the Trustee moved for supplemental authority, again under Code Section 721, to continue some commodity-related operations, particularly with respect to certain outstanding commodity customer accounts. *See* Doc. No. 70.[12]

---

[12] The Commission notes that when it proposed its Bankruptcy Rules, it stated that because "a commodity broker is defined by the Code and [the proposed rules] in terms of its customers, a firm without customers would not be a commodity broker ...." 46 Fed. Reg. 57535, 57536 (Nov. 24, 1981). This is a reference to the last part of the Code definition of "commodity broker" in Section 101(6). That is, a commodity broker is a futures commission merchant "with respect to which there is a customer as defined in section 761...." Section 761(9)(A) defines "customer" generally as a person *that holds a claim* against the debtor on account of commodity transactions.

Accordingly, once Refco completes its mandatory duties under Subchapter IV of Chapter 7 and the CFTC's Bankruptcy Rules, a trustee's report, reporting that the Subchapter IV liquidation process has been completed, might well operate as a sufficient procedural condition subsequent to permit this Court to revisit the chapter conversion issue.

In this regard, the Commission is aware that under circumstances very different from those that exist now at the early stage of this case, a court might exercise discretion to permit chapter conversion, which the court would not have permitted in earlier phases of the case. *See, e.g., In re Eureka Southern Railroad Co., Inc.*, 177 B.R. 323 (Bankr. N.D. Calif. 1995)(in a 9-year old case, conversion from Subchapter IV of Chapter 11 to Chapter 7 permitted in 1995 after every good faith effort to complete railroad reorganization plan had been exhausted and the plan failed, all railroad assets had been sold under the plan in 1992, and despite fact that in 1986 when petition was filed, debtor had operated a railroad).

# CONCLUSION

WHEREFORE, this Court should deny the Debtor Refco LLC's motion for conversion from Chapter 7 to Chapter 11.

                                                              Respectfully submitted,

                                                              Nanette R. Everson (NE 8892)
                                                              General Counsel

                                                              Kirk Manhardt (KM 2150)
                                                             Deputy General Counsel


                                                             /s/_____
                                                             Glynn L. Mays (GM 7261)
                                                             Senior Assistant General Counsel

                                                             George G. Wilder (GW 0381)
                                                             Counsel

March 17, 2006                            Office of General Counsel
                                                            Commodity Futures Trading Commission
                                                            1155 21st Street, N.W.
                                                            Washington, D.C.  20581
                                                            Tel:  (202) 418 5120/ 5140
                                                            Fax:  (202) 418 5524